UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 21-23439-CIV-MORENO

MARIA DEL PILAR CHAVEZ,

      Plaintiff,

vs.

SKY FLORIDA SERVICES, LLC d/b/a
CLEANPRO,

      Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

Plaintiff, Maria Del Pilar Chavez, worked for the Defendant Sky Florida Services, LLC, known as Cleanpro doing mold remediation. During the course of her employment, Plaintiff suffered harassing incidents with two separate employees. One, Jorge Rendon, touched her genitals when she was on a ladder, and later sent her a text message describing a sexual act with her. In the message, Rendon also told Plaintiff that he surreptitiously videotaped her while she was at home. Although Cleanpro initially fired Rendon after the text message, Rendon returned to work at Cleanpro two weeks later. After he inappropriately touched Plaintiff while on the ladder, Cleanpro suspended all three employees, including the Plaintiff.

The other employee, Jayson Ardon, exposed his erect penis to Plaintiff. A video shows his hand moving next to his penis in the car ride with the Plaintiff. No disciplinary action was taken against Ardon. The Court finds that Plaintiff's sex discrimination claims for a constructive discharge and a hostile work environment survive Defendant's renewed motion for summary judgment. The Court, however, grants summary judgment on Plaintiff's retaliation claims under

Title VII.

THIS CAUSE came before the Court upon upon the Defendant's Renewed Motion for Summary Judgment **(D.E. 75)**, filed on **June 20, 2022**.

THE COURT has considered the motion, the response, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED as to the retaliation claims in Counts 3 and 4 and DENIED as to all other counts.

## I.     Factual Background

Plaintiff, Maria Del Pilar Chavez, is suing her former employer Sky Florida Services, LLC ("Cleanpro") for employment discrimination and retaliation. Plaintiff's complaint stems from incidents of sexual harassment in the workplace. Plaintiff claims she was constructively discharged because Cleanpro did not address her complaints of sexual harassment by two male co-workers. Plaintiff also claims she suffered a hostile work environment.

Cleanpro is a water, fire, and mold remediation company consisting of approximately 15 employees. Camilo Campuzano is Cleanpro's owner, who makes all employment-related decisions. He is assisted by an office manager named Wanda Gonzalez, who served as a dispatcher communicating the details of mitigation jobs to employees. Federico Campuzano, Camilo's brother, is the company's technical supervisor.

Camilo Campuzano is a native of Cali, Colombia, and he knew Plaintiff and her family prior to her coming to work at Cleanpro. When Plaintiff moved to the United States in 2019, she reached out to Camilo Campuzano, a close friend of her brother's, for work. Camilo Campuzano offered her a job at CleanPro and Plaintiff began working for CleanPro in late 2019 as a junior technician or "helper." She excelled and became a technician, who had helpers assigned to her.

Plaintiff worked with Jorge Rendon, who was one of Plaintiff's "helpers" and a technician. Rendon worked with Plaintiff frequently because she requested him on her team. Other helpers did not want to be assigned to work with Plaintiff, because, as she explains, she held their work to a high standard. Plaintiff lived in an apartment in Cutler Bay, and Mr. Rendon began picking her up in the morning before work. Plaintiff and Rendon would often share lunch. The parties dispute whether Rendon would take Plaintiff shopping, do her laundry, or pay for her meals. Plaintiff states that she never went shopping with Rendon, and they each paid for their own food when they ate together. She states that on two occasions she paid Rendon to do her laundry because there was no laundry available in her building.

In February 2020, Plaintiff was working on a job site with Rendon and William Burneo. While Plaintiff was on a ladder, she states that Rendon placed his hand on her genitals. An argument broke out amongst the three CleanPro employees, and the client called the company to complain. Camilo Campuzano spoke with the three employees, who gave conflicting accounts of what transpired. At the time, Plaintiff claims she told Federico Campuzano about the incident. Camilo Campuzano, however, suspended all three employees due to their argument at the client's home. Federico Campuzano provided the disciplinary forms for the suspension. After this incident, Plaintiff states that she was required to keep working with Rendon.

After Rendon inappropriately touched Plaintiff, she nevertheless continued to attend CleanPro work events where Rendon was in attendance. She remained cordial with Rendon because it was important for her to preserve her job. Defendant disputes that the nature of their relationship was purely professional. Plaintiff claims that Rendon would send her inappropriate messages, but did not touch her inappropriately after the February 8, 2020 incident. She did not

report these messages until April 2021, as she feared retaliation considering she had been suspended after reporting that Rendon had inappropriately touched her.

In late April 2021, Rendon sent a text message to Plaintiff where he described a dream he had in which he was having sexual relations with the Plaintiff. The text message provides explicit details. He also says that he watches a video of Plaintiff every night, which he surreptitiously took of her through her window. Plaintiff immediately showed Wanda Gonzalez the text message. She says that Federico Campuzano got upset with her for doing so. Rendon is Federico Campuzano's father-in-law. As a result of the vulgar text message, Camilo Campuzano terminated Rendon's employment on April 28, 2021. Less than two weeks later, on May 11, 2021, Camilo Campuzano asked Rendon to come back to work at CleanPro.

On October 21, 2020, Jayson Ardon began working at CleanPro. Ardon worked as Plaintiff's "helper." Ardon is 28-years younger than the Plaintiff. While on a road trip in 2021, Ardon asked to stop on the side of the road so he could relieve himself. Plaintiff states Ardon did so in a manner that exposed himself to her. On February 8, 2021, Plaintiff noticed that Ardon's erect penis could be seen from the bottom of his shorts while he was driving the CleanPro van. Plaintiff immediately texted Federico Campuzano saying she did not know how to handle the situation. Federico Campuzano called Plaintiff and said to tell Ardon that the job is cancelled. When Plaintiff ended the phone call, she started recording on her phone while she pretended to keep talking to Campuzano. The video shows Ardon's erect penis coming out the bottom of the shorts. At one point, the video shows that Ardon is moving his hand next to his penis.

When she arrived at the warehouse, Plaintiff testifies that Federico Campuzano told her that Ardon had serious problems or may have smoked marijuana that day. Plaintiff also states that Federico Campuzano told her that next time Ardon exposed himself, she should do the

company a favor and engage in an explicit sexual act. Plaintiff also testified that despite the incident, Federico Campuzano required her to work another job on the same day with Ardon. On March 23, 2021, Plaintiff advised Camilo Campuzano what had occurred. The parties dispute whether Plaintiff worked with Ardon subsequent to the incident. There is some evidence that Ardon went to work in Texas, but the parties dispute when that took place. The parties also dispute whether upon his return from Texas on April 20, 2021, Ardon worked at CleanPro. It is undisputed that Ardon was not disciplined or terminated for his behavior. Ardon formally resigned from CleanPro on May 25, 2021.

In early May 2021, Plaintiff was injured in a car accident. On May 18, 2021, Camilo Campuzano sent Plaintiff a message asking her to contact the office manager about returning to work. He told Plaintiff that if she did not wish to return to set up a time to drop off the CleanPro equipment. Plaintiff claims that on May 19, 2021, she advised Camilo Campuzano that if either Ardon or Rendon were still employed, she would not continue to work for CleanPro. Plaintiff was aware that although Rendon had been terminated in late April 2021, Camilo Campuzano had asked him to return to work on May 11, 2021. Plaintiff was also aware that Ardon had returned from Texas and was still employed at CleanPro. Plaintiff did not receive a response to her text and did not return to work. No CleanPro employee ever told Plaintiff that she was fired or terminated.

## II. <u>Legal Standard</u>

Fed. R. Civ. P. 56 provides, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). The existence of some factual disputes between litigants will not defeat an otherwise properly

ground motion for summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

### III. Legal Analysis

Plaintiff's five-count complaint asserts the following claims: (1) sex discrimination under Title VII of the Civil Rights Act of 1964; (2) sex discrimination under the Florida Civil Rights Act; (3) retaliation under Title VII; (4) retaliation under the Florida Civil Rights Act; and (5) retaliatory discharge in violation of § 440.205, Fla. Stat.

As a threshold matter, Defendant contends that the Court should not consider evidence of Rendon's and Ardon's actions because Plaintiff did not specifically mention the incidents in her charge of discrimination before the Florida Commission on Human Relations and the Equal Employment Opportunity Commission. It is well-settled, however, that plaintiffs may raise claims which "amplify, clarify, or more clearly focus" allegations made in an administrative complaint. *Lightsey v. Potter*, 268 F. App'x 849, 852 (11th Cir. 2008). Here, Plaintiff alleged in

her charge that she was discriminated against because of her sex and that both Ardon and Rendon sexually harassed her. Unequivocally, her charge of discrimination does not limit Plaintiff's claims in this case.

*A. Counts 1 & 2: Sex Discrimination*

Plaintiff seeks to recover damages for Defendant's sex discrimination, which she claims affected the conditions of her employment.[1] Plaintiff claims that Defendant is liable because she suffered a constructive discharge and a hostile work environment.

Title VII claims based on circumstantial evidence require courts to employ the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to evaluate a plaintiff's claims on summary judgment. To establish a *prima facie* case of sex discrimination, plaintiff must establish that (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subject to an adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019). There is no dispute that Plaintiff satisfies the first two prongs. The parties dispute whether there is an adverse employment action. Plaintiff concedes that she is unable to meet the fourth prong because this is not a comparator case. "The plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case." *Gibson v. JetBlue Airways, Corp.*, No. 20-10943, 2021 WL 5368056, *7 (11th Cir. Nov. 18, 2021).

Aside from the *McDonnell Douglas* framework, an employee can survive a summary judgment motion by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." A court may find a plaintiff survives summary judgment

---

[1] In cases arising under both Title VII and the Florida Civil Rights Act, no independent analysis of a claim under the Florida Civil Rights Act is necessary. *Wilbur v. Correctional Servs. Corp.*, 393 F.3d 1192, 1195 n. 1 (11th Cir. 2004).

7

when the facts, viewed in the light most favorable to the plaintiff, present "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* A convincing mosaic can be shown by pointing to "(1) suspicious timing, ambiguous statements. . ., and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* (quoting *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019)).

1. *Wrongful Termination*

To establish an adverse employment action, a plaintiff must allege that she suffered "a serious and material change in the terms, conditions, or privileges of employment." *Chapman v. U.S. Posal Serv.*, 442 F. App'x 480, 484 (11th Cir. 2001). The record is undisputed that CleanPro did not fire Plaintiff. The record shows that Plaintiff suffered an injury in early May 2021, and did not return to work after that date. She texted Camilo Campuzano on May 19, 2021 to state that she would not return to work if Rendon and Ardon remain employed with the company. Essentially, Plaintiff's claim is that she was constructively discharged.

To establish a claim of constructive discharge, a plaintiff must show that the "working conditions became so intolerable that a reasonable person in her position would have been compelled to resign." *Moore v. San Carlos Park Fire Prot. & Rescue*, 808 F. App'x 789, 798 (11th Cir. 2020). "[F]or a constructive discharge claim to present a jury issue and survive summary judgment, the plaintiff must produce substantial evidence that conditions were intolerable." *Jones v. Allstate Ins. Co.*, 707 F. App'x 641, 646 (11th Cir. 2017). "A claim for constructive discharge requires the employee to demonstrate that the work environment and conditions were so unbearable that a reasonable person in that person's position would be compelled to resign." *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1363 (11th Cir. 1994)

In this case, the severity of the incident with Ardon and the subsequent text message from Rendon –constitute the type of intolerable conditions that would lead a reasonable person to feel compelled to resign. This is especially true where, as here, the company failed to discipline Ardon for exposing his erect penis to the Plaintiff and where the company fired, but rehired Rendon within two weeks after he sent Plaintiff a text message describing a sexual act with her in extreme detail and admitting to videotaping her through her window.[2] The Court finds that a reasonable jury could find that the incidents involving Rendon and Ardon are intolerable workplace conditions compelling a person to resign.

"In determining whether a reasonable person would be compelled to resign, courts consider the amount of time between the objectionable acts and the constructive discharge, with a longer gap cutting against reasonableness." *Moore*, 808 F. App'x at 798 (quoting *Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993)) (finding no constructive discharge where harassment ceased several months before resignation); *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317-18 (11th Cir. 1989) (finding no constructive discharge where harassment stopped several weeks before the employee resigned). In this case, the latest incident of harassment, Rendon's text message, took place in late April 2021, and Plaintiff resigned on May 18, 2021 after learning that ClearPro hired Rendon back on May 11, 2021. This is sufficiently close in time from which a jury could find Plaintiff acted reasonably in not returning to work.

Having found there is an issue of material fact as to whether the Plaintiff suffered a constructive discharge and given Plaintiff's concession that this is not a comparator case, the Court must next examine whether the record evidence sufficiently establishes a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by

the decisionmaker." *Gibson*, 2021 WL 5368056 at *4. As evidence of discriminatory intent, Plaintiff points to the lack of discipline imposed on Rendon and Ardon for their actions. After Rendon sent the text message to Plaintiff in late April 2021, ClearPro saw fit to terminate him, but then rehired him on May 11, 2021. After the incident with Ardon on February 8, 2021, there is no evidence that Cleanpro disciplined Ardon despite Plaintiff's video. Indeed, Plaintiff testified that Federico Campuzano told her that next time Ardon exposed himself, she should do the company a favor and engage in a sexual act with him. A supervisor's statement that Plaintiff should have succumbed to harassing behavior to appease the company is evidence from which a reasonable jury could infer a discriminatory intent. Cleanpro has not set forth a justification for its failure to impose discipline on Ardon and its decision to rehire Rendon, a mere two weeks after the text message was sent. Certainly, this is evidence from which a reasonable jury can draw an inference of discriminatory intent.

Despite this evidence of discriminatory intent, Defendant argues it cannot be liable for Rendon's text message, which was sent outside of work hours. "As a general proposition, employers are not responsible under Title VII for hostile sexual acts resulting from nonwork-related off-duty interactions between co-employees." *Meece v. Atl. Se. Airlines, Inc.*, No. 1:04-CV-3698, 2006 WL 2228937, * (N.D. Ga. Aug. 2, 2006). "When the sexual act occurs outside the workplace, the plaintiff must identify sufficient facts from which to infer a connection between the hostile sexual conduct and the employment." *Id.* Here, there are sufficient facts upon which to infer a connection between the text message and the condition of Plaintiff's employment. Upon learning that Rendon returned to work two weeks after sending the sexually explicit message, the Plaintiff testified that she felt compelled to resign. *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982) ("Whether sexual harassment at the workplace is sufficiently

severe and persistent to affect seriously the psychological well being of employees is a question to be determined with regard to the totality of the circumstances."). Accordingly, the Court finds there is sufficient record evidence from which a reasonable jury could determine the after hours text message and Rendon's rehiring was an intolerable condition compelling Plaintiff to resign.

    2. *Hostile Work Environment*

The threshold issue in the motion for summary judgment is whether Plaintiff's complaint sufficiently put Defendant on notice of Plaintiff's theory that she was subject to a hostile work environment claim. *Hulsey v. Pride Restaurants, LLC* disposes of this issue. 367 F.3d 1238, 1246 (11th Cir. 2004). In *Hulsey*, the plaintiff sought to recover for a tangible employment action and a hostile work environment. The defendant, Pride Restaurants, argued it did not address plaintiff's tangible employment action theory in the summary judgment motion because the plaintiff did not plead the theory as a separate claim in her complaint. Here, the Defendant argues that Plaintiff fails to state a hostile work environment claim because she did not plead it in the complaint. The Eleventh Circuit held that the plaintiff in *Hulsey* was not required to plead tangible employment action as a separate claim because it is just "one of two ways sexual harassment can rise to the level of violating Title VII." *Id.* "When we talk about tangible employment action and hostile environment, what we are or should be talking about are the two alternative ways a plaintiff may establish a basis for the employer's vicarious liability[.]" *Id.* In this particular case, the Court notes that Defendant has been on notice of Plaintiff's theory of liability because Defendant pled two affirmative defenses stating that Plaintiff failed to establish a *prima facie* case of a hostile work environment. Therefore, the Court will not find that Plaintiff's failure to separately plead a hostile work environment is grounds for dismissal. *Id.* ("While it may well be preferable to plead different theories of recovery in separate counts, it is not required.").

"To be actionable under Title VII, a hostile work environment must be both 'objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so.'" *Id.* at 1247 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). The objective severity or pervasiveness of the conduct is evaluated by assessing the "(1) frequency of the conduct; (2) severity of the conduct; (3) whether the conduct was physically threatening and humiliating or just a mere utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." *Id.* at 1247-48. The Court need not obtain evidence on each factor, independently, but rather, must review the totality of the circumstances.

In this case, Plaintiff complains of three incidents, which took place over a year and two months.

In this case, the totality of the circumstances allow the Plaintiff to survive summary judgment. Plaintiff testified that Ardon exposed himself to her on two occasions. The Court agrees with Plaintiff that Ardon's exposing himself in front of her was severe. Indeed, it is a crime under Florida Statute § 800.03 (2020); *see U.S. E.E.O.C. v. Dillard's Inc.*, No. 6:07-cv-1496, 2009 WL 789976, *9 (M.D. Fla. 2009) (finding that supervisor's behavior masturbating in front of employee to be sufficiently severe to allow hostile work environment claim to survive summary judgment).

The question, however, is whether the employer should be vicariously liable under Title VII for Ardon's behavior. To demonstrate applicability of the *Faragher* defense, the employer must exercise reasonable care to prevent and correct promptly any sexually harassing behavior, and show that the plaintiff failed to avail herself of corrective opportunities provided by the employer. *Faragher*, 524 U.S. at 807. Here, the record evidence is sufficient from which a

reasonable jury could find that Cleanpro failed to take corrective action when Plaintiff advised of the hostile behavior. Upon advising Federico Campuzano of Ardon's behavior, Plaintiff testified that Federico Campuzano told her that Ardon had probably smoked marijuana that day, and she should do the company a favor by engaging in a sexual act with him. Campuzano also scheduled her to work another job with Ardon that same day. It is also undisputed that Cleanpro has no procedures for reporting incidents of harassment. Accordingly, the Court finds that Plaintiff's hostile work environment claim survives the motion for summary judgment.

### B. Retaliation

Plaintiff's complaint alleges retaliation under Title VII and the Florida Civil Rights Act in Counts 4 and 5. To establish a prima facie case of retaliation under Title VII, the plaintiff bears the burden of establishing that (1) she participated in an activity protected by Title VII; (2) that she suffered an adverse employment action; and (3) that there is a causal connection between her participation in the protected activity and the adverse employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Plaintiff claims that after she complained about each incident, the Defendant retaliated against her by requiring her to work with Rendon and Ardon again. Even if the Court were to consider that Plaintiff having to work with Rendon and Ardon constituted an adverse employment action, the record evidence does not show that the reason she had to work with Rendon and Ardon was in retaliation for her having complained about their behavior. Accordingly, the Court grants summary judgment on the retaliation claims.[3]

---

[3] Where a plaintiff cannot maintain a retaliation claim under Title VII, the plaintiff also cannot maintain a retaliation claim under the Florida Civil Rights Act. *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1390 (11th Cir. 1998) (stating decisions under Title VII guide the analysis of claims under the Florida Civil Rights Act).

### C. Retaliatory Discharge

Plaintiff's complaint alleges retaliation under Florida's Worker's Compensation Statute §§ 440.205. Defendant's motion does not make arguments as to why summary judgment is appropriate on Count V. Accordingly, the Court denies summary judgment on Count 5.

DONE AND ORDERED in Chambers at Miami, Florida, this ___18th___ of August 2022.

                                                 FEDERICO A. MORENO
                                               UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record